## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

TONY VITRANO COMPANY ET AL.,           *

    Plaintiffs,                              *

                                             *

v.                                       *

                                             *    Civil No. 21-00148-BAH

LANASA PRODUCE, INC. ET AL.,             *

    Defendants.                              *

                                             *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

### MEMORANDUM OPINION

This matter was brought pursuant to the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499a et seq. *See* ECF 1, at 4–7. Plaintiffs, Tony Vitrano Company ("Vitrano") and The Class Produce Group, LLC ("Class" and collectively "Plaintiffs"), sued Lanasa Produce Inc. ("Lanasa Produce"), a now-defunct grocery store business, and its owner, Stephen Lanasa, seeking unpaid costs for produce sold on credit. ECF 31 (Complaint); ECF 46-3, at 2 (including breakdown of costs allegedly owed). Live disputes exist between Plaintiffs and Lanasa's other non-PACA-licensed creditors, such as IOU Central Inc. ("IOU") and Green Capital Funding, LLC ("Green Capital"). *See* ECF 98 (IOU's stipulation of dismissal, pending court approval); ECF 96, at 1 ¶ (indicating Plaintiffs and Green Capital are currently pursuing limited factual discovery). Another dispute arose between IOU and IOU's former counsel, Mr. Wersant, as Mr. Wersant filed a motion seeking enforcement of a lien on any monies IOU acquires in this litigation. ECF 93.

The Court addresses three pending motions currently ready for disposition: (1) Plaintiffs' Motion for Default Judgment Against Lanasa at ECF 46; (2) Plaintiffs' unopposed Motion for

Disbursement of Funds at ECF 67; and (3) Mr. Wersant's Motion to enforce a lien at ECF 93.[1]

The motions filed at ECFs 46 and 67 are unopposed. Plaintiffs filed a response in opposition to

Mr. Wersant's motion at ECF 100. Mr. Wersant did not file a reply and the time to do so has

expired. Loc. R. 105.2(a) (D. Md. 2023). All filings include memoranda of law and exhibits. The

Court has reviewed all relevant filings and finds that no hearing is necessary. *See* Loc. R. 105.6

(D. Md. 2023). Accordingly, for the reasons stated below, Plaintiffs' Motions are **GRANTED**

and Mr. Wersant's Motion is **DENIED**.

## I.    BACKGROUND

This case has a complicated procedural history and the stages of this litigation can be

broken up into five groups: (1) Plaintiffs bring suit against Lanasa Produce and Mr. Lanasa; (2)

another creditor to Lanasa Produce and Mr. Lanasa bring counterclaims and crossclaims; (3) the

case is administratively closed during Mr. Lanasa's bankruptcy proceedings and subsequently

reopened; (4) the appearance of new counsel on behalf of IOU revives settlement negotiations;

and (5) IOU's former counsel seeks relief of unpaid attorney's fees against IOU, opposing IOU's

stipulation of dismissal.

### A.    Plaintiffs Bring Suit Against Lanasa Produce and Mr. Lanasa.

Vitrano filed the instant matter on January 19, 2021, to recover payment pursuant to the

Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499a et seq. for wholesale

quantities of produce sold to and accepted by Lanasa Produce. ECF 1 (suing Lanasa Produce and

its owner, Stephen Lanasa). On January 22, 2021, Plaintiff filed an Amended Complaint, adding

Class as a Plaintiff. ECF 8. Plaintiffs also filed motions seeking a preliminary injunction and a

---

[1] In light of ECF 101 and the Parties' indication of a likely settlement, the Court will refrain from ruling on Plaintiffs' motion to dismiss IOU's counterclaim at ECF 74.

temporary restraining order.  ECFs 10, 11.  Counsel for Plaintiffs and counsel for both Lanasa Produce and Mr. Lanasa filed a Stipulated Findings of Fact and Conclusions of Law in Support of Consent Order Granting Plaintiffs' Motion for Preliminary Injunction (the "Stipulated Facts").  ECF 14.

The Parties stipulated to the following facts: (1) Plaintiffs were licensed under the PACA; (2) Lanasa Produce owed Plaintiffs the aggregate principal amount of $185,809.10 for wholesale quantities of produce sold to and accepted by Lanasa Produce; (3) The invoices Plaintiffs sent to Lanasa Produce included the requisite notice of intent to preserve trust right language required by 7 U.S.C. § 499e(c)(4); (4) Lanasa Produce ceased operations without paying Plaintiffs the aggregate principal amount of $185,809.10 as required by PACA; (5) Lanasa Produce was in financial jeopardy in that it ceased operations without paying Plaintiffs; and (6) Lanasa Produce had $115,597.75 in accounts receivable that Lanasa Produce agreed and authorized counsel for Plaintiffs to collect for the benefit of Plaintiffs. ECF 14, at 1–2 ¶¶ 1–7. The Stipulated Facts also recited the legal basis for an injunction requiring the turnover of assets to Plaintiffs and agreed to an order requiring that the assets of Lanasa Produce be turned over to Plaintiffs. *Id.* at ¶¶ 14–17.

On February 9, 2021, the Court entered the Consent Order Granting Plaintiffs' Motion for Preliminary Injunction (the "Consent Injunction").  ECF 17.  The Consent Injunction prohibited Defendants as well as any third parties and financial institutions from dissipating, paying over, or assigning any assets of Lanasa Produce or its subsidiaries or related entities and expressly required Lanasa and its banking institutions to turn over to counsel for Plaintiffs any funds in their possession that belonged to Lanasa Produce. *Id.* at 2.  The Consent Injunction authorized counsel for Plaintiffs to collect the accounts receivable of Lanasa Produce, which counsel did.  ECF 67, at 3 ¶ 8.

As a result, Counsel for Plaintiffs is holding the total amount of $116,723.71 in its trust account. The amount and source of the funds is as follows: $79,432.03 from Lanasa Produce's accounts receivable, $12,291.68 from Lanasa Produce's accounts at Bank of America, and $25,000.00 from a settlement with one of Lanasa Produce's secured lenders, On-Deck Capital. *Id.* ¶ 9

### B. IOU, a Creditor to Lanasa Produce and Mr. Lanasa brings Counterclaims and Crossclaims, and Adds New Party Defendants.

On March 22, 2021, the Clerk docketed the Second Amended Complaint, which added Green Capital Funding, LLC ("Green Capital") and IOU as party defendants. ECF 21. On April 16, 2021, the Court granted Plaintiffs' Consent Motion for Leave to File a Third Amended Complaint and Other Relief to add, The Avenue K&B, LLC t/a The Avenue Kitchen and Bar (the "Avenue") as a Defendant.[2] ECF 30.

On May 26, 2021, IOU filed a Counterclaim against Plaintiffs, and a Crossclaim against Lanasa Produce, Mr. Lanasa, Kelly Lanasa (Mr. Lanasa's spouse), Richard Costella (counsel for Lanasa Produce and Mr. Lanasa), and the Avenue. ECF 37.

On June 15, 2021, Plaintiffs filed a Motion to Dismiss Counts I, III, IV and V of IOU's Counterclaim, ECF 43. Mr. Costella also filed a Motion to Dismiss Count III of IOU's Counterclaim that same day. ECF 44. Additionally, on June 28, 2021, Plaintiffs filed a Request for Clerk's Entry of Default Against Lanasa, ECF 45, and a Motion for Entry of Default Judgment Against Lanasa, ECF 46.

On June 30, 2021, IOU filed a Motion requesting an extension until July 6, 2021, to file responses to both Plaintiffs' Motion to Dismiss IOU's Counterclaim and Mr. Costella's Motion to

---

[2] On May 28, 2021, Plaintiff filed a Request for Entry of Default of the Avenue and a Motion for Default Judgment Against the Avenue. ECFs 38, 39. The Clerk noted the Avenue's default on June 11, 2021, ECF 40, and the Avenue did not respond to Plaintiff's Motion.

Dismiss Count III of IOU's Counterclaim. ECF 47. IOU also sought leave to respond to Plaintiffs' Motion for Default Judgment Against Lanasa. *Id.* The Court granted IOU's requests. ECF 48.

Despite the extension, IOU did not respond to the Motions to Dismiss by July 6, 2021, and it did not seek a further extension of time under Fed. R. Civ. P. 6(b). ECF 67, at 4 ¶ 19. IOU also did not respond to Plaintiffs' Motion for Default Judgment Against Lanasa within the fourteen (14) day period provided under Local Rule 105(2)(a), despite being granted leave to do so. *Id.* at 5 ¶ 20.

Then, on August 2, 2021, IOU filed a Notice to the Court advising that IOU would be filing a Response to the Motion for Default Judgment Against Lanasa Produce and a Motion for Leave to File Amended Answer Counterclaim and Crossclaim that day. ECF 49. IOU did not file any pleadings on August 2, 2021. ECF 67 at 5 ¶ 21. On August 6, 2021, however, IOU filed a Motion For Leave To Amend And Respond To Motions (ECFs 43, 44 46), And Related Relief Of Defendant IOU. ECF 51. IOU never filed a response to Plaintiff's Motion for Default Judgment against Lanasa Produce. ECF 67 at 5 ¶ 25. Defendant Richard Costella and Plaintiffs filed responses in opposition to IOU's Motion on August 17, 2021, and August 20, 2021, respectively. ECFs 52, 53.

### C. The Administrative Closure Pending Bankruptcy Proceedings and Subsequent Reopening

Then on September 26, 2021, Mr. Lanasa filed a Suggestion of Bankruptcy. ECF 54. On March 28, 2022, this Court administratively closed this matter based on Mr. Lanasa's bankruptcy. ECF 55.

The following Motions were pending before the Court when it closed this matter:

(1) Plaintiffs' unopposed Motion for Entry of Default Judgment Against The Avenue K&B, LLC, ECF 39;

(2) Plaintiffs' Motion to Dismiss Counts I, III, IV, and V of the Answer of Defendant IOU,
ECF 43;

(3) Counter-Defendant Mr. Costella's Motion to Dismiss Count III of the Counter-Claim
of IOU, ECF 44;

(4) Plaintiffs' Motion for Entry of Default as to Lanasa, ECF 45;

(5) Plaintiffs' Motion for Entry of Default Judgment Against Lanasa Produce, ECF 46;

(6) IOU's Motion for Leave to Amend and Respond to Motions (at ECFs 43, 44, 46) and
Related Relief of Defendant IOU, ECF 51.

On October 14, 2022, the Court granted Plaintiffs' Motion to Reopen and directed that
Plaintiffs may reinstate any Motions by "filing a simple line request that they be considered." *See*
ECF 55, at 2 (permitting parties to reinstate pending motions via a line filing); ECF 62 (reopening
the case); ECF 63 (approving Plaintiffs' request to reinstate the motions at ECFs 39, 43, 45, and
46).

On October 31, 2022, the Court Approved Plaintiff's Line to reinstate the following
motions: (1) Plaintiffs' unopposed Motion for Entry of Default Judgment Against the Avenue at
ECF 39; (2) Plaintiffs' Motion to Dismiss Counts I, III, IV, and V of the Answer of Defendant
IOU at ECF 43; (3) Plaintiffs' Motion for Entry of Default as to Lanasa at ECF 45; and (4)
Plaintiffs' Motion for Entry of Default Judgment Against Lanasa at ECF 46. ECF 63. That same
day, the Court granted Plaintiffs' Motion for entry of Default Judgment Against the Avenue at
ECF 39. *See* ECF 65. On September 25, 2023, Plaintiffs filed a motion for disbursement of funds
to distribute PACA Trust Assets. ECF 67.

On September 26, 2023, the Court granted Plaintiff's Motion for Clerk's Entry of Default
as to Lanasa Produce at ECF 45. *See also id.* (denying ECFs 43 and 44 as moot given the Court.

granted IOU's motion for leave to amend at ECF 51). In this order, the Court indicated it would stay resolution of the pending Motion for Default Judgment as to Defendant Lanasa Produce, at ECF 46, for a period of thirty days after the Clerk's entry of default. ECF 68, at 4. The Court later ordered Plaintiffs to file proof of service as to Lanasa Produce, ECF 71, which Plaintiffs filed at ECF 72. Plaintiffs also filed a motion to dismiss IOU's counterclaims at ECF 74.

### D. IOU Retains New Counsel and the Case is Transferred to the Undersigned.

Subsequently on October 18, 2023, this case was transferred to the undersigned. On January 10, 2024, the Court directed the parties to provide a joint status report, ECF 78. On January 29, 2024, IOU's counsel, Paul Wersant, filed a consent motion to withdraw as counsel to IOU based on IOU's failure to pay attorney's fees, ECF 79, which the Court granted at ECF 81.

IOU entered an appearance for substitute counsel on March 27, 2024, after the Court issued a show cause order given IOU is a corporation that may not proceed without counsel, ECF 83. Counsel to IOU requested the Court wait to rule on the pending motions to allow IOU's new counsel time to consult with each party in this matter to narrow or clarify the issues, *see* ECF 85 (requesting a joint status report on April 30, 2024), a request that the Court approved, ECF 86.

On April 8, 2024, IOU and Counter-Defendant Mr. Costella issued a stipulation of dismissal of all claims against Mr. Costella, pursuant to Rule 41 of the Federal Rules of Civil Procedure. ECF 87. Mr. Costella was accordingly dismissed as a party. *See* ECF 88 (approving the stipulation of dismissal at ECF 87 and denying Mr. Costella's motion to dismiss at ECF 82 as moot). Thereafter, IOU and Lanasa Produce, as well as Kelly Lanasa filed a stipulation of dismissal of IOU's crossclaims and third-party claims against Lanasa Produce and Ms. Lanasa under Rule 41. ECF 89. The Court approved the stipulation at ECF 90, and Ms. Lanasa was dismissed as a party.

Mr. Lanasa, a Defendant and Counterclaim Defendant, was discharged in bankruptcy on January 21, 2022. *Id.* at 1 n.1. His estate was fully administered, and the bankruptcy matter was closed on December 22, 2022. ECF 91, at 2 n.1. The parties indicate the bankruptcy matter has "no bearing on Plaintiffs' remaining allegations against Green Capital and IOU Central," and Mr. Lanasa "asserts that he should be dismissed from this case based on his discharge in bankruptcy." *Id.* at 5.

On April 30, 2024, Plaintiffs and IOU filed a joint status report providing an update on settlement discussions. ECF 91. The parties requested until May 21, 2024, to continue settlement discussions, at which point in time the parties indicated they would file a joint status report "for how to move this matter forward." *Id.* The Court granted this request and granted the parties' second request that they have until May 21, 2024 "for any Party to file any opposition to the Pending Motions." *Id.* at 5; ECF 92.

**E. IOU's Former Counsel Seeks to Enforce a Lien Against IOU.**

Then, on May 11, 2024, IOU's former counsel, Mr. Wersant, filed a Motion to Enforce Lien and Alter and Related Relief, such as to Amend Order [ECF 81]. ECF 93. Mr. Wersant notes that because IOU still has a stake in this action, and Mr. Wersant claims ownership interests in any monies IOU receives, Mr. Wersant asks this Court to order to enforce his lien. *See generally id.*

On May 21, 2024, the parties submitted a joint report, again requesting an extension of time to continue settlement discussions. *See* ECF 94. The parties indicated they had "made some progress" and that if Plaintiffs and IOU reached an agreement to dismiss IOU's counterclaims, the only pending motions to remain would be the unopposed motion for default judgement against Lanasa at ECFs 46 and the unopposed motion for disbursement of funds at ECF 67. Thereafter, the only remaining live disputes would be between Plaintiffs and IOU and Plaintiffs and Green Capital. ECF 94, at 2 ¶ 4.

The Court approved the request, ECF 95, and the parties submitted another joint status report on June 19, 2024. ECF 96. In this report, the parties indicate they have "agreed to the dismissal of IOU's counterclaim and believe they may be able to resolve the remaining dispute if they are allowed to continue their discussions for a short while longer," until June 30, 2024. ECF 96, at 1 ¶ 1. Additionally, Plaintiffs engaged with Green Capital's counsel, who indicated Green Capital is no longer operating. *Id.* ¶ 2. Nevertheless, Plaintiffs and Green Capital proposed "a shortened discovery period until August 16, 2024, for Plaintiffs and Green Capital to conduct fact discovery" and the Plaintiffs and Green Capital agreed to "seek a neutral mediator and complete mediation by September 13, 2024." *Id.* Mr. Wersant subsequently filed a Response to the Parties' Status Report [ECF 95]. *See* ECF 97.

Then, on June 20, 2024, Plaintiffs and IOU entered a stipulation of dismissal of IOU's counterclaims against Plaintiffs pursuant to Fed. R. Civ. P. 41. ECF 98. Mr. Wersant filed an objection to the dismissal of IOU. ECF 99. IOU filed a response to Mr. Wersant's motion to enforce a lien. ECF 100. Mr. Wersant did not file a reply and the time to do so has expired. *See* Loc. R. 105.2(a) (D. Md. 2023).

Finally, on July 1, 2024, Plaintiffs and IOU filed an updated status report indicating they have reached an agreement in principle that contemplates a resolution of all claims between Plaintiffs and IOU, *i.e.*, ECF 74, that will be reduced to writing within thirty (30) days, or by July 31, 2024. ECF 101.

## II.    LEGAL STANDARD

A court may enter default against a defendant who "has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise . . . ." Fed. R. Civ. P. 55(a). Once default has

been entered, the party seeking to recover must generally move the court for default judgment.[3] Fed. R. Civ. P. 55(b). The Fourth Circuit has a "strong policy" that "cases be decided on their merits." *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993). However, "default judgment may be appropriate when the adversary process has been halted because of an essentially unresponsive party." *SEC v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005) (citing *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)).

In reviewing a motion for default judgment, the court accepts as true the well-pleaded factual allegations in the complaint as to liability. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780–81 (4th Cir. 2001). It remains for the court, however, to determine whether these unchallenged factual allegations constitute a legitimate cause of action. *Id.*; *see also* 10A Wright, Miller & Kane, Federal Practice and Procedure § 2688.1 (4th ed.) ("Liability is not deemed established simply because of the default . . . [and] the court, in its discretion, may require some proof of the facts that must be established in order to determine liability."). The party seeking a default judgment must provide sufficient factual and legal support for its request for damages and, if appropriate, attorney's fees. *See Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001) (noting that except where the amount of damages is certain, the court must make an independent determination of damages in reviewing a motion for default judgment and may rely on detailed affidavits or documentary evidence to determine the appropriate sum); *Lawbaugh*, 359 F. Supp. 2d at 422 ("Upon default, the well-pled allegations in a complaint as to liability are taken as true, although the allegations as to damages are not.").

---

[3] In the limited case where a plaintiff seeks default and "the plaintiff's claim is for a sum certain or a sum that can be made certain by computation," the clerk can enter default judgment at the plaintiff's request as long as the amount of damages has been demonstrated in a supporting affidavit. Fed. R. Civ. P. 55(b)(2)(1).

## III.    DISCUSSION

The Court addresses the first addresses Plaintiffs' unopposed Motions for Default Judgment Against Lanasa at ECF 46 and for Disbursement of Funds at ECF 67; and second, the Court considers Mr. Wersant's Motion to enforce a lien at ECF 93.

### A.    Plaintiffs' Motions for Default Judgment Against Lanasa at ECF 46 and Motion for Disbursement of Funds at ECF 67 are Granted.

On June 28, 2021, Plaintiffs moved for the entry of default judgment against Defendant, Lanasa Produce, Inc., pursuant to Rule 55(b) of the Federal Rules of Civil Procedure.  ECF 46; *see also* ECF 68 (granting Plaintiffs' motion at ECF 45 for Clerk's Entry of Default).

The Court engages in a two-step inquiry in assessing the propriety of default judgment:

> First, the Court must decide "whether the unchallenged facts" in the complaint "constitute a legitimate cause of action." *Agora Fin., LLC v. Samler*, 725 F. Supp. 2d 491, 494 (D. Md. 2010).  Second, if the Court finds that the complaint makes out a legitimate cause of action, the Court must then "make an independent determination" as to appropriate relief.  *See id.*  In the case of a default judgment that seeks declaratory relief, such relief is appropriate "if the well-pleaded allegations of the complaint establish the plaintiff's right to such relief." *CitiMortgage, Inc. v. Holmes*, No. DKC-13-1641, 2015 WL 224944, at *2 (D. Md. Jan. 14, 2015).

*Pac. Union Fin., LLC v. Ford*, Civ. No. PX-17-1309, 2018 WL 4095471, at *2 (D. Md. Aug. 28, 2018).  Plaintiffs have demonstrated that the unchallenged facts constitute a legitimate cause of action, and the Court determines Plaintiffs' requested relief is appropriate.

#### 1.    The unchallenged facts constitute a legitimate cause of action.

A brief background on PACA is helpful.  "PACA provides for the establishment of trust funds to protect sellers of perishable agricultural commodities [*i.e.*, produce] from defaulting buyers." *Fresh Kist Produce, L.L.C. v. Choi Corp.*, 362 F. Supp. 2d 118, 120 (D.D.C. 2005). Should a buyer of produce default on payment obligations either by going bankrupt or becoming insolvent, the buyer's trust reimburses the sellers of produce, who are considered the trust

beneficiaries. *Id.* "Congress enacted PACA so that a defaulting buyer's assets would be used to satisfy the trust fund before they are used to satisfy other debts." *Id.*; *Produce All. v. Let-Us Produce*, 776 F. Supp. 2d 197, 200–201 (E.D. Va. 2011) ("PACA is a remedial statute that was enacted in an effort to protect produce suppliers facing unique business risks due to the perishable nature of their products."). As a result, produce sellers have trust beneficiary status and "are reimbursed ahead of most other creditors if a produce buyer becomes insolvent." *Id.*; *In re Kornblum & Co., Inc.*, 81 F.3d 280, 284 (2d Cir. 1996) ("A PACA trust beneficiary is thereby entitled to claim trust property ahead of even creditors holding security interests in the property.").

PACA imposes a trust on all produce-related assets, including the produce itself, other products derived therefrom, and any receivables or proceeds from the sale thereof, held by agricultural merchants, dealers, and brokers. 7 U.S.C. § 499e(c)(2). "Ordinary principles of trust law apply to the trusts created by the Act." *In re Kornblum & Co., Inc.*, 81 F.3d 280, 284 (2d Cir. 1996) (noting, for instance, that in the event of the Produce Debtor's bankruptcy, the Bankruptcy Code excludes PACA trust assets from the bankruptcy estate (citing *Morris Okun, Inc. v. Harry Zimmerman, Inc.*, 814 F. Supp. 346, 348 (S.D.N.Y.1993)).

One way in which PACA trusts are unique is that a PACA trust is a floating, non-segregated trust in which "commingling is contemplated." 7 C.F.R. § 46.46(b). *Sanzone-Palmisano Co. v. M. Seaman Enters., Inc.*, 986 F.2d 1010, 1014 (6th Cir. 1993) (noting that once commingled, the presumption is that all of a produce buyer's assets are PACA trust assets). *In re H.R. Hindle & Co., Inc.*, 149 B.R. 775, 784 (Bankr. E.D. Pa. 1993) ("The term 'floating' extends the trust to all produce-related inventory, receivables, and proceeds of the debtor-dealer, regardless of origin or destination, to satisfy a PACA trust res." (citation omitted)). Thus, once a seller's PACA trust-beneficiary status is established, "it has no obligation to trace the assets to specific funds." *Id.*

Although the produce buyer's obligation to preserve the trust arises automatically upon the sale of produce on credit, the produce seller must provide notice to the buyer of its intent to preserve its PACA trust rights. 7 U.S.C. § 499e(c)(3) (indicating unpaid sellers lose the benefit of such a trust unless written notice is given of the intent to preserve the benefits of the trust). Produce sellers licensed under the PACA may provide such notice by including the following language on the face of their invoices:

> The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499e(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received.

7 U.S.C. § 499e(c)(4).

Courts also treat prejudgment interest and attorney's fees as part of the sums owed when the parties have agreed to such terms by contract in the commercial transaction that gives rise to the trust. *Middle Mountain Land & Produce Inc. v. Sound Commodities Inc.*, 307 F.3d 1220, 1224 (9th Cir. 2002) ("PACA protects all that is due and owing in connection with the perishable agricultural commodity transaction."). This is because PACA requires debtor buyers of produce to hold the produce, all inventories derived from the produce, and receivables from the sale of such produce in trust "for the benefit of all unpaid suppliers or sellers of such commodities . . . until full payment of the *sums owing in connection with* such transaction has been received." 7 U.S.C. § 499e(c)(2) (emphasis added). Parties are permitted to contract as to what is included within the "sums ow[ed]." *See Middle Mountain Land and Produce, Inc.*, 307 F.3d at 1224–25 (holding supplier's contractual claim for attorney's fees and interest was within scope of trust claim under PACA); *Country Best v. Christopher Ranch, LLC*, 361 F.3d 629, 632 (11th Cir. 2004) (finding

that the term "sums owing in connection with" includes "not only the price of commodities but also . . . attorneys' fees and interest that buyers and sellers have bargained for in their contracts.").

Applying these concepts to the present case, Plaintiffs assert the following factual allegations that are treated as true: (1) Plaintiffs are licensed dealers under the PACA, ECF 46, at 6 ¶ 1; (2) Lanasa Produce was at all times relevant hereto a licensed dealer under and subject to the PACA, *id.* at 7 ¶ 5; (3) Between September 25, 2020, and January 13, 2021, Plaintiffs sold and delivered to Defendants Lanasa Produce and Stephen Lanasa wholesale quantities of produce and other goods in the aggregate principal amount of $201,359.60, of which $185,809.10 was for produce, and all of which was accepted by Defendants, *id.* at 6–7 ¶ 2; (3) Plaintiffs preserved their PACA trust rights by including the requisite language on their invoices to Lanasa Produce, *id.* at 7 ¶ 3; (4) Plaintiffs' invoices entitle Plaintiffs to recover prejudgment interest and attorneys' fees incurred to collect any balance due from Defendants *id.* ¶ 4; (5) The aggregate interest due to Plaintiffs through June 28, 2021, is $19,113.28, with Vitrano due $15,935.47 and Class due $3,177.81, *id.*; (6) Plaintiffs also have incurred attorneys' fees and costs of $27,895.35 through May 31, 2021, with Vitrano having incurred $23,008.09 and Class having incurred $4,887.26, *id.*; and (7) Pursuant to the Consent Order Granting Plaintiffs' Motion for Preliminary Injunction entered February 9, 2021 [Doc. 17], Plaintiffs' counsel has collected $111,723.71 in Lanasa Produce trust assets from Defendants' bank accounts, accounts receivable, and a third party in possession of Lanasa trust assets, with all collections being held in trust pending further order of the Court due to competing claims to the funds, *id.* ¶ 6.

Having reviewed the factual allegations, the Court is satisfied that these uncontested facts establish and entitlement to PACA trust funds. Plaintiffs have shown they provided the requisite notice on invoices. ECF 11-7 (Vitrano Invoices); ECF 11-12(Class Invoices); ECF 11-14 (same).

Plaintiffs' invoices specifically include provisions which account for attorneys' fees and interest payments to be considered in connection with their transactions under the PACA trust. *See, e.g.,* ECF 11-14, at 2 ("Attorney fees and costs necessary to collect any balance due hereunder shall be considered sums owing in connection with the transaction under the PACA trust."); ECF 11-7, at 6 (same). Therefore, Plaintiffs have established an entitlement under PACA.

2. <u>Plaintiffs are entitled to share PACA Trust Assets on a Pro-Rata Basis.</u>

The Motions for Temporary Restraining Order and Preliminary Injunction, the Declarations of Plaintiffs' representatives and exhibits thereto, which include the copies of the PACA licenses and invoices, the Stipulation, Consent Order, and Third Amended Complaint and exhibits thereto all confirm that Plaintiffs are qualified trust beneficiaries of Lanasa Produce. *See* ECFs 10, 11 and exhibits attached (submitting motions for preliminary injunction and a temporary restraining order); ECF 31 (Third Amended Complaint); ECF 14 (Stipulated Facts); ECF 46-5–46-7 (including attorney's fees bill journals); ECF 46-3–46-4 (including invoices compiled as to produce sold to Lanasa from Plaintiffs); ECF 46-2 (Declaration of Mary Jean Fassett, Counsel to Plaintiffs), at 2–7 (regarding the calculation of interest and attorney's fees); *see also* ECF 17 (order granting Plaintiff's motion for preliminary injunction).

Plaintiffs' counsel submitted a declaration for the calculation of an 18% prejudgment interest rate per annum on Vitrano's unpaid invoices through June 28, 2021, ECF 46-2, at 4 ¶ 7, claiming entitlement to a total interest amount of $15,935.47.[4] *Id.* An additional declaration was

---

[4] Vitrano submitted for the record the invoices delivered to Lanasa Produce from September 2020 to January 2021, which included the following provision: "Interest at 1.5%/month added to unpaid balance. Interest and attorney's fees necessary to collect any balance due hereunder shall be considered sums owing in connection with this transaction under the PACA trust." ECF 11-7, at 3.

submitted for an 18% prejudgment interest rate per annum on Class' unpaid invoices,[5] calculated

using the same method,[6] through June 28, 2021, *id.* ¶ 8, claiming entitlement to a total interest

amount of $3,177.81. *Id. See* ECF 46-3 (calculating Vitrano's total amount due); ECF 46-4

(calculating Class' total amount due).

Plaintiffs counsel has also provided documentation supporting the award of attorneys' fees

and costs. *See* ECF 46-2 (Declaration of Mary Jean Fassett, Counsel to Plaintiffs), at 2–7

(regarding the calculation of interest and attorney's fees); ECF 46-5–46-7 (including attorney's

fees bill journals). Class demonstrates an entitlement to $4,887.26 in attorney's fees and costs,

ECF 46-4, which includes $4,609.94 in attorney's fees and $277.32 in costs, ECF 43-2, at 6 ¶ 16.

Vitrano demonstrates an entitlement to $23,008.09, ECF 46-3; which includes $21,702.56 and

$1,305.53 in costs, ECF 43-2, at 6 ¶ 15; *see also* ECF 46-2, at 6 ¶ 14 (indicating an extra $1,582.82

in total costs were incurred through "filing fees, private process servers, LEXIS/NEXIS, federal

express deliveries, and postage, as detailed on the Client Expense Report attached hereto as Exhibit

6"); *id.* at 4 ¶ 9 (explaining pro rata division of costs for jointly represented clients).

Finally, Plaintiffs' counsel submitted documentation demonstrating an entitlement to the

monetary value of wholesale quantities of produce. Vitrano demonstrates an entitlement to

$151,427.35, ECF 46-3, at 2 (identified as the total "PACA Amount Due"), and Class demonstrates

---

[5] Class submitted for the record the invoices delivered to Lasana Produce from November 2020 to January 2021, which included the following provisions: "Interest shall accrue @ 1.5% per calendar month from date of delivery for any unpaid balance. Interest, Attorney fees and costs necessary to collect any balance due hereunder shall be considered sums owing in connection with the transaction under the PACA trust." ECF 11-14, at 2.

[6] Both the invoices from Vitrano and Class value the interest rate at 1.5% monthly, which is equivalent to the 18% annual interest rate cited by Plaintiffs' counsel. *See, e.g.*, ECF 11-7; ECF 11-14, at 2.

an entitlement to $34,381.75, ECF 46-4, at 2 (same); *see also* ECF 46-3–46-4 (including invoices compiled as to produce sold to Lanasa from Plaintiffs).

Thus, in sum Vitrano has established an entitlement to an award of $190,370.91. ECF 46, at 2. This amount includes $151,427.35 for wholesale quantities of produce, plus prejudgment interest in the amount of $15,935.47, plus an award of reasonable attorneys' fees and costs through May 31, 2021, in the amount of $23,008.09. *Id.* Class has established an entitlement to an award of $43,348.82, including the principal amount of $34,381.75 for wholesale quantities of produce, plus prejudgment interest in the amount of $3,177.81, plus an award of reasonable attorneys' fees and costs through May 31, 2021, in the amount of $4,887.26, for a total judgment amount of $42,446.82.[7] *Id.*

Accordingly, Plaintiffs have established "a right of recovery [from the PACA Trust Asserts] that is superior to the right of all other creditors, including secured creditors." *Nickey Gregory Co., LLC*, 597 F.3d at 595. However, the funds held in trust are insufficient to pay the Plaintiffs in full. The total funds held in trust amount to $116,723.71, with $79,432.03 from Lanasa Produce's accounts receivable, $12,291.68 from Lanasa Produce's accounts at Bank of America, and $25,000.00 from a settlement with one of Lanasa Produce's secured lenders, On-Deck Capital. ECF 67, at 3 ¶ 9.

---

[7] Both Plaintiffs appear to include an additional sum of approximately $1,000 as part of the total invoice, that is not part of the "Total PACA Amount Due." *See* ECF 43-3; ECF 43-4. It appears the extra amount is for non-PACA goods such as lime juice, lemon juice, and apple cider. *See* ECF 11-13, at 2 (indicating $902 owed to Class from sale of lime juice and lemon juice under the heading "non-PACA listing"); ECF 11-6 (indicating $1,140 owed to Vitrano from the sale of apple cider under the heading "non-PACA listing"). The Court does not see an explanation in the record as to a PACA-licensed seller's entitlement to priority for reimbursement of non-PACA goods, and, therefore, the Court does not include these amounts within the total judgment.

17

When the assets of a produce buyer are insufficient to pay its PACA Trust Creditors in full, the assets are split among them on a pro-rata basis. *See In re Milton Poulos, Inc.*, 947 F.2d 1351, 1353 (9th Cir. 1991); *Middle Mountain Land & Produce Inc.*, 307 F.3d at 1222 ("Because the assets of the statutory PACA trust were insufficient to cover all PACA claimants, the court-appointed receiver recommended a *pro rata* distribution of the funds to all PACA claimants.").

Accordingly, as Plaintiffs' have established an entitlement to the funds held in trust and provided sufficient evidence supporting its calculation of Plaintiffs' entitlements, the Court enters default judgment against Lanasa in Vitrano's favor in the amount of $190,370.91, and in Class' favor in the amount of $42,446.82. The Court also grants Plaintiffs' motion for disbursement of funds, ECF 67, and orders the assets held in trust be split on a pro-rata basis.

### B. IOU's Stipulation of Dismissal is approved and Mr. Wersant's Motion to Enforce a Lien is denied.

Mr. Wersant filed a motion seeking a court order to enforce his lien for compensation of fees owed to him from his prior representation of IOU in this action.[8] ECF 93. After IOU and Plaintiffs provided a joint status report on June 19, 2024, ECF 96, Mr. Wersant filed a response entitled "Improper Request for Relief by IOU in Status Report and Notice of IOU's Failure to Respond to Mr. Wersant's Motion." ECF 97. Subsequently, IOU filed a stipulation of dismissal of its counterclaims against Plaintiffs, ECF 98, which Mr. Wersant opposes, ECF 99. Finally, IOU

---

[8] Mr. Wersant speculates that IOU may have stipulated to dismissal of its claims in order to conduct a covert settlement with Plaintiffs and deprive Mr. Wersant of the enforcement of his lien in this action. ECF 99, at 1. Mr. Wersant, therefore, requests that if the dismissal is based upon a settlement that the Court order IOU and Plaintiffs to disclose such information within five (5) business days. *Id.* at 2. Given that Mr. Wersant is not a party to the dispute between IOU and Plaintiffs, *see infra*, the Court will not impose a requirement on the parties to disclose information regarding settlements.

then filed a response to Mr. Wersant's motion at ECF 93. ECF 100. Mr. Wersant did not file a

reply and the time to do so has expired. Loc. R. 105.2(a) (D. Md. 2023).

First, regarding Mr. Wersant's motion to enforce a lien,[9] IOU correctly notes that Mr.

Wersant has not filed a motion to intervene pursuant to Rule 24 of the Federal Rules of Civil

Procedure.[10]  *See* ECF 100, at 1. Rule 24 outlines circumstances of mandatory and permissive

intervention for non-parties that claim an interest relating to the property or transaction that is the

subject of the action. Fed. R. Civ. P. 24.

When a non-party fails to properly intervene, the Court lacks jurisdiction over the non-

party's dispute. *See United States v. 1308 Selby Lane, Knoxville, TN 37922*, 675 F. App'x 546,

547 (6th Cir. 2017) (upholding district court's dismissal of a non-party's appeal when the non-

party never properly intervened and was "never a party to the lawsuit"); *Infant Formula Antitrust*

*Litig., MDL 878 v. Abbott Lab'ys*, 72 F.3d 842, 843 (11th Cir. 1995) (holding the "district court

lacked subject matter jurisdiction over" a motion for preliminary injunction brought against a non-

party to the underlying antitrust action). Rule 12(b)(1) of the Federal Rules of Civil Procedure

empowers a court to dismiss claims over which it lacks subject matter jurisdiction. Fed. R. Civ.

---

[9] Mr. Wersant claims an entitlement to fees under his employment contract and under Georgia's lien law and asserts that he provided notice to IOU and "Insperity," who he describes as an alleged "co-employer." ECF 93 ¶¶ 4–5, 15; *see also id.* at 7–8.

[10] Mr. Wersant argues in his opposition to IOU's and Plaintiff's joint status report that the Court should disregard IOU's response at ECF 100 to Mr. Wersant's motion to enforce a lien at ECF 93 due to IOU's response being untimely filed. *See* ECF 97, at 2. However, as the Court has noted at earlier points in this litigation, the Fourth Circuit has a preference for deciding issues on their merits, *Daulatzai v. Maryland*, 606 F. Supp. 3d 252, 262 (D. Md. 2022), and the Court has on numerous occasions considered IOU's late filings when Mr. Wersant was IOU's counsel of record. *See supra* Section I.B (indicating IOU failed to respond to a motion to dismiss by the deadline it requested); *see* ECF 68, at 3 (permitting IOU leave to amend despite filing one month past its deadline).

P. 12(b)(1); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

Even if Mr. Wersant were to have filed a motion to intervene, the Court would lack subject matter jurisdiction over his dispute. While the Court may possess ancillary jurisdiction in cases involving disputes over attorneys' fees, the doctrine of ancillary jurisdiction is narrowly construed, and the court must be cautious in its application. *Bruton v. Carnival Corp.*, 916 F. Supp. 2d 1262, 1265 (S.D. Fl. 2012). Ancillary jurisdiction is more appropriate in cases involving disputes over attorneys' fees where the attorney seeking the lien did not voluntarily withdraw from the case. *United States v. Buhler*, 278 F. Supp. 2d 1297 (M.D. Fl. 2003) (citing *Broughten v. Voss*, 634 F.2d 880, 882 (5th Cir. 1981)) (holding that the court's duty to protect its officers is not present when an attorney voluntarily removes themselves from the case). Mr. Wersant voluntarily sought to withdraw himself as counsel for IOU. *See* ECF 79, at 1 ¶ 3.

Additionally, the Fourth Circuit requires a relationship between the lien and the litigation when there is a dispute over attorneys' fees. *Taylor v. Kelsey*, 666 F.2d 53, 54 (4th Cir. 1981). In *Taylor*, despite the plaintiffs' previous counsel filing a motion to intervene, the court found that the lien was outside the court's ancillary jurisdiction because a fee dispute between prior co-counsel bore no relationship to the underlying dispute over damages caused by pesticides. *Id.* The court further agreed that "neither judicial economy nor fairness militated in favor of federal jurisdiction." *Id.* Mr. Wersant's claim similarly bears no relation to the present litigation that would support the Court hearing it pursuant to its ancillary jurisdiction. Mr. Wersant has not provided a reason that would require hearing this case in federal court with the justification of judicial economy or fairness. This is not the ideal forum for resolution of a contractual dispute based in Georgia law, particularly when this PACA suit has been pending for over three years, and

is, according to the Parties' most recent status report, ECF 101, nearing its ending. Even if the Court found there was ancillary jurisdiction for Mr. Wersant's claim, the Court would still be unable to provide a remedy, as IOU is agreeing to withdraw their claims, ECF 98, meaning that IOU has no entitlement to monies from which Mr. Wersant might claim an entitlement.

Given the lack of opposition to the stipulation of dismissal from a party to the case, the Court approves IOU's and Plaintiff's stipulation of dismissal at ECF 98. Accordingly, IOU's Counterclaims against Plaintiffs, ECF 51-2, are **DISMISSED**. The Court also **DENIES** Mr. Wersant's motion to enforce a lien, ECF 93, due to want of jurisdiction. Additionally, the Court instructs the Clerk to **DISMISS** Stephen Lanasa as a party to this case as the Parties have indicated they have no pending dispute against him. *See* ECF 96, at 2 ¶ 4. The Court **APPROVES** IOU and Plaintiff's joint status report filed on June 19, 2024, at ECF 96. The following disputes remain in this litigation: (1) Plaintiffs maintain a claim against IOU, though an agreement was reached in principal, and is being reduced to writing, that will resolve all disputes between them, ECF 101; and (2) Plaintiffs maintain a claim against Green Capital, with limited discovery ongoing and mediation deadlines set by ECF 96, at 1 ¶ 2.

## IV.   CONCLUSION

Upon consideration of Plaintiffs' motions and for good cause shown, it is hereby **ORDERED** that Plaintiff's Motion for Default Judgment against Lanasa Produce at ECF 46 and Plaintiffs' Motion for Disbursement of Funds at ECF 67 is **GRANTED**. Further, IOU's stipulation of dismissal is **APPROVED**, and Mr. Wersant's Motion to Enforce Lien is **DENIED** for want of jurisdiction. A separate implementing order shall issue.

Dated: July 12, 2024

_____/s/_____

Brendan A. Hurson
United States District Judge